**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Dr. NADER KREIT,<br><br>     Plaintiff,<br><br><br>    v.<br><br>BYBLOS BANK S.A.L,<br><br>     Defendant. | Index No. 1:22-cv-10751<br><br><br>**COMPLAINT** |

   Plaintiff, by their undersigned counsel, allege against the Defendant the following as their complaint:

<u>**INTRODUCTION**</u>

  1. This is an action to recover the funds Plaintiff have deposited with Defendant. Defendant Byblos Bank S.A.L. ('Byblos Bank') has refused to pay in accordance with its obligations under the terms of the party's bank contract and despite Plaintiff's lawful withdrawal requests.

  2. For over a decade Plaintiff Dr. Nader Kreit entrusted Defendant Byblos Bank with a lifetime worth of savings.

  3. Starting in 2019, Defendant refused to pay Plaintiff their money. Despite multiple demands, Defendant refuses to honor its obligation to pay Plaintiff's money.

  4. There can be no debate that $577,061.70 United States Dollars (USD), 17,426,165.37 Euro, and 167,008,507.00 Lebanese Pounds (LBP) (approximately 19,000,000.00 USD) of Plaintiff's money on deposit with Defendant bank is immediately due to Plaintiff.

5.   Plaintiffs is seeking a prejudgment attachment under *quasi in rem* via the "Interbank" and "Nostro" accounts of Defendant bank held by US banks in New York acting as the US correspondents of Defendant bank in the amount of $23,474,500.00 USD.

6.   The amount of approximately $23,474,500.00 USD includes $577,061.70 USD, 17,426,165.37 Euro, and 167,008,507.00 LBP invested with Byblos Bank Lebanon, as per bank statement (Ex. A), and $4,474,500.00 in lost income in USD for two years, which would have been generated by investing the frozen investments in the S&P 500 Index which averaged 23.55% for the years 2020 and 2021 as per (Ex. B).

7.   This cash amount is held by US banks in New York in "Interbank" and "Nostro" accounts funded and owned by Byblos Bank and its depositors such as the Plaintiff.

8.   The prejudgment attachment without a hearing or a prior notice under *in rem* is a primary procedure to secure the property pending its full recovery in the amount of $23,474,500.00 in total through a final judgment.

9.   Without This Court's immediate action, the conversion of the Plaintiff's investment account will cause irreparable harm to Plaintiff.

10.  The funds in the "interbank" accounts of US banks are in the Jurisdiction of this Court. They cover the charges for business and commercial transactions in USD of Defendant Byblos Bank and their clients in the US and abroad.

## PARTIES

### Plaintiff

11.  Plaintiff, Dr. Nader Kreit, is a natural person domiciled in the state of Texas.

**Defendant**

12. Defendant, Byblos Bank S.A.L. (Byblos Bank) is a banking entity with a principal place of business located in the country of Lebanon.

**Correspondent Banks**

13. The Bank of New York Mellon Corporation (BNY Mellon) is domiciled in New York County, City, and State of New York at 28 Liberty St., New York, NY 10005, and is a correspondent bank of Byblos Bank. BNY Mellon holds NOSTRO accounts for Byblos Bank.

14. Citibank, N.A., (Citibank) is domiciled in New York County, City, and State of New York at 28 Liberty St., New York, NY 10005, and is a correspondent bank of Byblos Bank. Citibank holds NOSTRO accounts for Byblos Bank.

15. JP Morgan Chase & Co. (JP Morgan) is domiciled in New York County, City, and State of New York at 28 Liberty St., New York, NY 10005, and holds NOSTRO accounts for Byblos Bank.

16. Standard Chartered PLC, (Standard Chartered) is domiciled in New York County, City, and State of New York at 28 Liberty St., New York, NY 10005, and holds NOSTRO accounts for Byblos Bank.

17. Wells Fargo Bank N.A., (Wells Fargo) is domiciled in San Francisco, California, and accepts service of process at 80 State St., Albany, NY 12207 and holds NOSTRO accounts for Byblos Bank.

**STATEMENT OF FACTS**

18. Plaintiff is a dual citizen of The United States and Syria and resides in Texas.

19. Plaintiff is a successful dentist who operates several dental clinics in Texas.

20. Plaintiff opened a wealth management account with Byblos Bank Syria in 2011, funded

through a wire transfer from US banking entity Wells Fargo Bank N.A.

21. On December 28, 2012, Plaintiff transferred his Byblos Bank Syria account to Byblos Bank Lebanon and opened other wealth management accounts with Byblos Bank to invest multiple currencies (USD, Euro, LBP).

22. Accounts were opened at the Kaslik Branch No. 5351 of Defendant Bank with onboarding documents including Know Your Client (KYC) with Customer Information Forms (CIF) self-authenticating forms, and W-9s provided for US Treasury and IRS reporting purposes.

23.  Plaintiff received monthly balance statements from Defendant Bank outlining principal and accrued interest maintained in his wealth management accounts.

24.  Plaintiff has continually reported his foreign interest income for the purpose of US Federal and State tax filings.

25.  Between November 13, 2015, and July 5, 2018, $4,825,000.00 was transferred from Wells Fargo Bank to Byblos Bank (Ex. C)

26. From 2012 to 2017 Plaintiff regularly transferred large deposits from his United States based Wells Fargo account to Defendant bank. The transfers were sent by international wire transfer.

27. In December of 2019, Plaintiff became aware of international news regarding the Lebanese bank crisis.

28. On or about December 4, 2019, Defendant and all other Lebanese Banks experienced a liquidity crisis due to the political and financial crisis that began earlier that year.

29. On or around December 2019, Defendant Byblos Bank without Plaintiff's knowledge

or consent seized Plaintiff's wealth management accounts in violation of his depository

agreements and without notice to Plaintiff. Defendant prohibited Plaintiff from using online

banking to access his accounts.

30. In 2021, Defendant exchanged a portion of Plaintiff's USD and Euro currency accounts

to LBP without Plaintiff's consent.

31. Between December 2019 and present Plaintiff has requested on multiple occasions to

transfer his funds back to a US bank account.

32.  Once such instance, on July 21, 2022, Plaintiff requested that $2,115,000.00 Euros

be transferred to his US account.

33. Defendant refused to complete the transfer of the funds.

34. On July 25, 2022, Plaintiff filed an emergency lawsuit in Lebanon which remains

unanswered to the date of this filing.

35. On August 23, 2022, Defendant notified Plaintiff of banks disinterest in his wealth

management accounts.

36. On September 29, 2022, Plaintiff received a notification from Byblos Bank

demanding for Plaintiff to pick up checks for his accounts. (Exhibit).

37. Upon information and belief these checks would not be accepted by any other bank.

38. The letter would require Plaintiff release and discharge all liability of the Defendant

towards the Plaintiff. (Ex. D, at 13).

39. Plaintiff has exhausted every possible avenue to attempt to recoup his money and obtain

redress and his last resort is through this Court in this action where Plaintiff is seeking

$19,000,000.00 of Plaintiff's money on deposit with Byblos Bank.

## DEFENDANT'S WRONGFUL CONDUCT

40. Prior to December 4, 2019, Plaintiff had free access to his account through Society for Worldwide Interbank Financial Telecommunications (SWIFT) transfers between US Banks and Byblos Bank in Lebanon.

41. The SWIFT system is the main method of money transfers among banks worldwide irrespective of the amount. It is often used by US banks for paying for purchases in USD, by clients of foreign banks, for which the US banks act as correspondents.

42. On or about December 4, 2019, due to the political and financial crisis that started earlier that year, Byblos Bank and other Lebanese banks experienced a liquidity crisis.

43. Due to the crisis, Lebanese Banks including Defendant denied depositors access to their own lawfully deposited funds.

44. As a result, Byblos Bank and other commercial banks began to illegally convert without the consent of depositors USD to Lebanese Pounds which experienced hyperinflation.[1]

45.  The forced conversion of USD occurred at arbitrary exchange rates which further devalued the account balances.

46.  Upon information and belief, local and international small and medium size depositors and businesses were illegally prohibited from accessing their money deposited at Byblos Bank which violated the bank agreement between Plaintiff and Defendant.

47.  Upon information and belief, Byblos Bank prohibited regular depositors from accessing their accounts, while they allowed the elite in the country to move billions of dollars offshore.

---

[1] The Lebanese Pound experienced over a 90% reduction in value from 2019 until present day. https://www.aljazeera.com/news/2022/5/26/lebanese-pound-value-drops-to-lowest-level (Last accessed November 19, 2022).

## JURISDICTION

48. This Court has *in personam* jurisdiction over defendant pursuant to CPLR § 302(a)(1) because defendant transacts business in New York via its correspondent banks.

49. This Court has *in personam* jurisdiction over defendant pursuant to CPLR § 302(a)(1) because defendant contracted with Plaintiff to provide banking services in and transfer funds to New York branches.

50. Byblos Bank has purposefully availed itself to establish and maintain commercial banking relationship with US banks located in New York County, City and State of New York by maintaining correspondent bank accounts, known as "Interbank" or "Nostro" bank accounts located in this jurisdiction of This Court.

51. Byblos Bank holds out its correspondent banking relationship and "Nostro" bank accounts located within the jurisdiction of This Court, to the world, as a means to further its commercial activities and to gain market acceptance, as well as maintain direct and continuous contact with the New York State and the US correspondent banks located in that State.

52. Byblos Bank repeatedly and systematically use respective correspondent and "Nostro" accounts at commercial banks located in New York County, City and State of New York, to purposefully avail itself to New York's dependable and transparent banking system, the US dollar as a stable and fungible currency, and for the predictability of New York's jurisdictional and commercial laws.

53. This Court has *quasi in rem* jurisdiction under CPLR § 314(3) and § 6201(1) as a result of the contemplated attachment of certain funds of defendant held in accounts within the State of New York, County of New York.

54. *Quasi in rem* jurisdiction is proper "where the plaintiff seeks to apply what he

concedes to be the property of the defendant to the satisfaction of a claim against him."
Restatement, Judgments, 5-9 *Hanson v. Denckla*, 357 U.S. 235, 246 n. 12, 78 S. Ct. 1228, 2
L.Ed.2d 1283.

55. This Court has personal jurisdiction over Byblos Bank as a result of Byblos Bank doing
business in the State of New York.

56. Pursuant to Title 28, Section 1332 of the United States Code, a court has subject matter
jurisdiction when there is diversity of citizenship and the amount in controversy exceeds
$75,000. This Court has subject matter jurisdiction over the matter as a result of diversity
jurisdiction between the Plaintiff and Defendant and the amount in controversy is approximately
$23,474,500.00 well exceeding the $75,000.00 threshold for Diversity Jurisdiction.

57. Defendant in this action has sufficiently substantial continuous contact with the State of
New York, including Nostro and Correspondent accounts in New York. Requiring the Defendant
to respond to a lawsuit in the State of New York would not offend traditional notions of fair play
and substantial justice. International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90
L.Ed. 95 (1945).

58. Venue is proper in this Jurisdiction pursuant to 28 U.S.C. § 1391.

59. Venue is proper in the Southern District of New York since Defendant's correspondent
bank accounts, and the funds contemplated by the motion for an Order of Attachment, are
located in New York.

60. *Quasi in rem* jurisdiction is sufficient basis, as a matter of law, to sustain the Plaintiff's
application for prejudgment attachment, without a hearing or a prior notice.

61. Venue is also proper in New York County under CPLR § 503(a).

62. In *Raad v. S.A.L.,* No. 21-2612 (2d Cir. Dec. 15, 2022). The Second Circuit Court of

Appeals issued a decision that Beirut courts do not have exclusive jurisdiction to try cases against Lebanese Banks such as Defendant Byblos Bank.

## FIRST CAUSE OF ACTION

### Breach of Contract

63.  This cause of action fully incorporates and reiterates the previous sections in their entirety.

64. The parties entered into several agreements governing their relationship.

65. Plaintiff agreed to deposit money with Byblos Bank while Byblos Bank agreed that Plaintiff could withdraw or transfer their funds from their accounts by providing instructions to Byblos Bank.

66. Plaintiff complied will all of his obligations under the bank agreements.

67. Plaintiff has actual knowledge Byblos Bank will not perform its contractual obligations regarding any future lawful instructions to transfer the funds Plaintiff have on deposits with Byblos Bank.

68. In fact, upon information and belief, Byblos Bank has misappropriated in bad faith Plaintiff's funds.

69. As a result of Byblos Bank's breach, Plaintiff has suffered and continue to suffer damages in amount to be determined at trial but of no less than approximately $19,000,000.00 USD.

## SECOND CAUSE OF ACTION

### Conversion

70. This cause of action fully incorporates and reiterates the previous sections in their entirety.

71. At all times prior to Defendant freezing access to Plaintiff's account, Plaintiff had five active and identifiable investment accounts with Defendant Bank.

72.  At all times prior to Defendant denying access, Plaintiff had ownership, control, and possession over the money held in each separate investment account.

73. Defendant Bank exercised complete control over Plaintiff's five investment accounts, to the exclusion of Plaintiff and have interfered with Plaintiff's right to possession to the investment accounts.

74. In 2020, Defendant exercised complete dominion and control over Plaintiff's USD, Euro, and Lebanese Pounds interfering with Plaintiff's legal title to his identifiable investment accounts in their respective currency.

75. At all relevant times, Plaintiff has a superior right, ownership, and control to his unique identifiable investment account.

76. Plaintiff has demanded on multiple occasions that Defendant close his identifiable accounts and return the money contained within.

77. Defendant bank without the consent or knowledge of Plaintiff converted a portion of his valuable USD to valueless Lebanese Pounds.

78. The Defendant's conversion is a separate actionable wrongdoing against the property of Plaintiff.

79. The Defendant's actions are extreme and outrageous and punitive damages are appropriate due to Defendant's actions.

80. As a direct result of Defendant's conversion of Plaintiff's personal property, Plaintiff has been damaged to the principal amount of approximately $19,000,000.00 excluding interest and opportunity cost in addition to any other damages determined at trial.

### THIRD CAUSE OF ACTION

### New York Uniform Voidable Transactions Acts (UVTA)

81. This cause of action fully incorporates and reiterates the previous sections in their entirety.

82. Plaintiff's USD and Euro deposits were held in investment accounts, in Plaintiff's title.

83. Plaintiff's deposit created a liability for Byblos Bank creating a debtor-creditor relationship.

84. Byblos knew of the liability and transferred funds without the knowledge and consent of Plaintiff in a matter that would render itself insolvent.

85. The Plaintiff's claim arose contemporaneously with the debtor-creditor relationship.

86. Before and after the Plaintiff's claim arose, Defendant sold, gifted, or otherwise transferred all or part of its USD and Euro assets to third parties.

87. The Defendant did not receive reasonably equivalent value in exchange for the transfer or obligation and Defendant engaged in these transactions knowing it was insolvent.

88. Upon information and belief Defendant made these transfers to corporate insiders, high level officials within the county, and to international banks in Nostro and Interbank accounts.

89. Defendant rendered itself insolvent when it made these transfers to corporate insiders.

90. Defendant was insolvent when it made these transfers to high level Lebanese officials.

91. Defendant was insolvent when it made these transfers to international banks in an attempt to move the money abroad.

92. The banks corporate insiders, high level Lebanese officials, and international banks had reasonable cause and notice upon international news that the Defendant was insolvent at the time they received USD and Euro transfers.

93. The Defendant's conveyances have harmed Plaintiff.

94. The Defendant's actions were fraudulent in regard to Plaintiff's rights.

95. The Defendant's transactions are voidable.

96. At the time of the transaction Plaintiff had a valid claim for $23,474,500.00.

## FOURTH CAUSE OF ACTION

### Uniform Fraudulent Conveyance Act (UFCA): Bank Transfer

97. This cause of action fully incorporates and reiterates the previous sections in their entirety.

98. Plaintiff's deposit created a liability for Byblos Bank creating a debtor-creditor relationship.

99. Defendant Bank and Lebanon's Central Bank is insolvent according to the country's deputy prime minister Saadeh Al-Shami.[2]

100.  The Plaintiff's claim arose contemporaneously with the debtor-creditor relationship.

101.  Before and after the claim arose, Defendant transferred all of Plaintiff's Euro and USD assets to third parties, leaving empty accounts with fictitious balances.

102.  The Defendant did not receive reasonably equivalent value in exchange for the transfer or obligation and Defendant engaged in these transactions knowing it was insolvent.

103.   Upon information and belief Defendant made these transfers to corporate insiders, high level officials within the county, and to international banks in Nostro and Interbank accounts.

---

[2] https://dailynewsegypt.com/2022/04/04/lebanon-government-declares-bankruptcy-central-bank-denies-claims/
(Last accessed December 19, 2022).

104.    Defendant was insolvent when it made these transfers to corporate insiders.

105.    Defendant was insolvent when it made these transfers to high level Lebanese officials.

106.    Defendant was insolvent when it made these transfers to international banks in an attempt to move the money abroad.

107.    The banks corporate insiders, high level Lebanese officials, and international banks had reasonable cause and notice upon international news that the Defendant was insolvent at the time they received USD and Euro transfers.

108.    The Defendant's conveyances have harmed Plaintiff.

109.    The Defendant's actions were fraudulent in regard to Plaintiff's rights.

110.    The Defendant's transactions are voidable.

111.    At the time of the transaction Plaintiff had a valid claim for $23,474,500.00.


**FIFTH CAUSE OF ACTION**

**Intent to Defraud: Debtor Creditor Law § 276**

112.    This cause of action fully incorporates and reiterates the previous sections in their entirety.

113.    Plaintiff's USD and Euro was held in investment accounts, in Plaintiff's title.

114.    Plaintiff's deposit created a liability for Byblos Bank creating a debtor-creditor relationship.

115.    Before and after the Plaintiff's claim arose, Defendant sold, gifted or otherwise transferred all or part of its USD and Euro assets to third parties.

116.    Upon information and belief Defendant made transfers to corporate insiders, high

14

level officials within the county, and to international banks in Nostro and Interbank accounts.

117.    Defendant had the actual intent to hinder, delay, and defraud Plaintiff a present and future creditor of Defendant.

118.    Defendant knew it was insolvent and would not be able to repay Plaintiff.

119.    The banks corporate insiders, high level Lebanese officials, and international banks had reasonable cause and notice upon international news that the Defendant was insolvent at the time they received USD and Euro transfers.

120.    The Defendant's conveyances have harmed Plaintiff.

121.    The Defendant's actions were fraudulent in regard to Plaintiff's rights.

122.    The Defendant's transactions are voidable.

123.    At the time of the transaction Plaintiff had a valid claim for $23,474,500.00.

## SIXTH CAUSE OF ACTION

### Special Damages: Lost Profits

124.    This cause of action fully incorporates and reiterates the previous sections in their entirety.

125.    At all relevant times, it was known to Defendant that Plaintiff had an investment account that was accruing interest.

126.    At all relevant times, Defendant knew or should have known that the Plaintiff would have invested their money elsewhere if not with Defendant.

127.    Plaintiff's losses are measured by the lost profits from his investments annually.

128.    Plaintiff would have invested his assets in the S&P 500 Index Fund if not with Defendant.

129.    The S&P 500 is a stock market index tracking the stock performance of 500 large

companies listed on the stock exchange in the United States.

130.    The average return for the S&P 500 is approximately 10% annually for nearly the last century.

131.    In 2020 and 2021 the S&P 500 had even higher average return rates of 18.4% and 28.71% respectively.

132.    Had Plaintiff been able to invest his assets during 2020 and 2021 in the S&P 500, he would have generated an average of 23.55% annually.

133.    Plaintiff has been damaged in the amount of $23,474,500.00.

134.    Plaintiff has suffered lost profits as a direct and foreseeable result of the Defendant's conversion.

### SEVENTH CAUSE OF ACTION

### Attachment

135.    This cause of action fully incorporates and reiterates the previous sections in their entirety.

136.    Attachment is available under *Quasi in rem* against local property of the Defendant upon providing notice.

137.    Plaintiff's damages are to be determined at trial but are not expected to be less than $23,474,500.00.

138.    Plaintiff would be entitled, in whole or in part, to a money judgment against Defendant.

139.    Defendant has significant assets with correspondent banks located within New York County, City, and State of New York.

140.    Defendant has directly identifiable money in USD located within New York

County, City, and State of New York.

141.    Plaintiff has a viable cause of action against Defendant.

142.    It is possible that Plaintiff will succeed on the merits of their claim against

Defendant.

143.    At least $23,474,500.00 is demanded by Plaintiff in this action.

144.    The Defendant has no known counter claim against Plaintiff.

145.    Plaintiff is entitled to an order of attachment in the amount of $23,474,500.00.

146.    Judgement over and against the sum of $23,474,500.00 is held by Defendant

147.    Byblos Bank with US Banks in their Nostro and Interbank accounts. This amount

is to be determined at trial but not expected to be less than $23,474,500.00.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Dr. Nader Kreit, respectfully requests that the Court enter

judgement as follows:

1.  As and for the First, Second, Third, Fourth, Fifth, and Sixth Cause of Action.

    A.  Judgment over and against the sum of $23,474,500.00, held by Defendant Byblos
        Bank with US Banks in their Nostro and Interbank accounts. This amount is to be
        determined at trial but not expected to be less than $23,474,500.00.

2.  As and for the Plaintiff's Seventh Cause of Action an Order of Attachment:

    A.  Over and against Citibank, "Interbank and Nostro" account in the Forum state in the
        amount of their relevant share of $23,474,500.00 based on Defendant funding five
        separate Interbank and Nostro accounts within the State of New York.

    B.  Over and against The Bank of New York, Mellon, "Interbank and Nostro" account in
        the Forum state in the amount of their relevant share of $23,474,500.00 based on

17

Defendant funding five separate Interbank and Nostro accounts within the State of New York.

C. Over and against JP Morgan Chase, "Interbank and Nostro" account in the Forum state in the amount of their relevant share of $23,474,500.00 based on Defendant funding five separate Interbank and Nostro accounts within the State of New York.

D. Over and against Standard Chartered Bank, "Interbank and Nostro" account in the Forum state in the amount of their relevant share of $23,474,500.00 based on Defendant funding five separate Interbank and Nostro accounts within the State of New York.

E. Over and against Wells Fargo, "Interbank and Nostro" account in the Forum state in the amount of their relevant share of $23,474,500.00 based on Defendant funding five separate Interbank and Nostro accounts within the State of New York.

3. Along with punitive damages, attorney's fees, costs, interest, and expenses associated with this action, and any other relief This Court deems proper.

Dated: New York, New York

December 20, 2022

THE LAW OFFICES OF BARRY E. JANAY P.C.

Barry E. Janay, Esq.
*Attorneys for Plaintiff*
90 Broad Street, 25th floor
New York, NY 10004
Telephone: (844) 562-3572
Email: bjanay@lobej.com

# Kreit Final SDNY Complaint

Final Audit Report                                                   2022-12-21

| | |
|---|---|
| Created: | 2022-12-21 |
| By: | Andrew Zeitz (azeitz@lobej.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAARI4AODcnJG8k_i-Q-rxNsI_RhxXojXwR |

## "Kreit Final SDNY Complaint" History

Document created by Andrew Zeitz (azeitz@lobej.com)
2022-12-21 - 0:04:22 AM GMT

Document emailed to Barry Janay (bjanay@lobej.com) for signature
2022-12-21 - 0:04:51 AM GMT

Email viewed by Barry Janay (bjanay@lobej.com)
2022-12-21 - 0:05:31 AM GMT

Document e-signed by Barry Janay (bjanay@lobej.com)
Signature Date: 2022-12-21 - 0:05:46 AM GMT - Time Source: server

Agreement completed.
2022-12-21 - 0:05:46 AM GMT

Adobe Acrobat Sign