UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                              :
DR. NADER KREIT,                                              :
                                                              :
                        Plaintiff,                            :
                                                              :                22-cv-10751 (LJL)
              -v-                                             :
                                                              :                MEMORANDUM &
BYBLOS BANK S.A.L.,                                           :                ORDER
                                                              :
                        Defendant.                            :
                                                              :
------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

      Defendant Byblos Bank S.A.L. ("Defendant") moves, pursuant to Federal Rules of Civil

Procedure 12(b)(2) and 12(b)(6), to dismiss the complaint against it for lack of jurisdiction and

for failure to state a claim for relief.  Dkt. No. 38.  For the reasons that follow, the motion to

dismiss for lack of jurisdiction is GRANTED.

## BACKGROUND

      The Court accepts the well-pleaded allegations of the complaint as true for purposes of

the motion to dismiss.  Dkt. No. 18.[1]

      This is but one of a number of cases in this District stemming from the Lebanese

financial crisis that began in 2019.  *See, e.g.*, *Elghossain v. Bank Audi S.A.L.*, 2023 WL 6390160

---

[1] On December 29, 2022, the plaintiff filed a motion for leave to refile his complaint with the
exhibits that he had been unable to attach when he originally filed his complaint.  Dkt. No. 14.
The Court granted that motion.  Dkt. No. 17.  Plaintiff filed the complaint with its attachments on
January 3, 2023.  Dkt. No. 18.  It is otherwise identical to the complaint filed on December 20,
2022.  For convenience, the Court refers to the complaint filed at Dkt. No. 18.

(S.D.N.Y. Sept. 29, 2023); *Moussaoui v. Bank of Beirut & the Arab Countries*, 2023 WL 5977239 (S.D.N.Y. Sept. 14, 2023).

Plaintiff Nader Kreit ("Plaintiff"), a dual citizen of the United States and Syria, is a dentist who resides in Texas and operates several dental clinics in Texas. Dkt. No. 18 ¶¶ 18–19. Defendant is a banking entity with its principal place of business in the country of Lebanon. *Id.* ¶ 12.

Plaintiff's relationship with Defendant began in 2012. In 2011, Plaintiff opened a wealth management account with Byblos Bank Syria funded through a wire transfer from Wells Fargo Bank N.A. ("Wells Fargo"). *Id.* ¶ 20. On December 28, 2012, Plaintiff transferred his Byblos Bank Syria account to Defendant and opened other wealth management accounts with Defendant to invest in multiple currencies, including the U.S. dollar, the euro, and the Lebanese pound. *Id.* ¶ 21. From 2012 to 2017, Plaintiff regularly transferred large sums of money from his U.S.-based Wells Fargo account to Defendant in Lebanon through international wire transfers. *Id.* ¶ 26. Between November 13, 2015 and July 5, 2018 alone, Plaintiff transferred $4,825,000.00 from Wells Fargo to Defendant. *Id.* ¶ 25.

As has been reported in other cases, *see, e.g.*, *Daou v. BLC Bank, S.A.L.*, 42 F.4th 120 (2d Cir. 2022), in late 2019, Lebanese banks, including Defendant, experienced liquidity issues due to a political and financial crisis in Lebanon that began earlier that year. Dkt. No 18 ¶¶ 28, 42. As a result, Defendant and other Lebanese banks denied depositors access to their lawfully deposited funds and prohibited depositors from accessing their money at the banks. *Id.* ¶¶ 43, 46; *see also Daou*, 42 F.4th at 126 (explaining that when the Lebanese pound dropped precipitously in value in late 2019, "the Lebanese banking sector tried desperately to prevent a

run on the banks, first by temporarily closing the country's banks, and then by making it nearly impossible to remove large quantities of USD from the country").

Prior to December 4, 2019, Plaintiff had free access to his account with Defendant through Society for Worldwide Interbank Financial Telecommunications ("SWIFT") transfers between Defendant and banks in the United States.  Dkt. No. 18 ¶ 40.  On multiple occasions between December 2019 and the commencement of this action, Plaintiff requested that Defendant transfer his funds to his U.S. bank account, but he was refused.  *Id.* ¶ 31.  On one instance, he requested that 2,115,000.00 euros be transferred to his United States bank account.  *Id.* ¶ 32.  Defendant refused to effectuate the transfer.  *Id.* ¶ 33.

Ultimately, in August 2022, Defendant notified Plaintiff that it was closing his accounts.  *Id.* ¶ 35.  In September 2022, Defendant offered to send Plaintiff a check in the amount of his remaining balance stated in Lebanese currency.  *Id.* ¶ 36; Dkt. No. 18-4.  Plaintiff alleges that his deposits were converted from U.S. dollars into Lebanese pounds without his consent and that the Lebanese pound experienced hyperinflation, which resulted in a devaluation of the account balances.  Dkt. No. 18 ¶¶ 44–45.

## PROCEDURAL HISTORY

Plaintiff commenced this action on December 20, 2022.  Dkt. No. 1.  Days later, Plaintiff filed a motion for an *ex parte* writ of attachment and an order to show cause, asking the Court to attach $23,474,500 in correspondent bank accounts maintained by Defendant.[2]  Dkt. Nos. 6, 9.

---

[2] "A correspondent bank account is a domestic bank account held by a foreign bank, similar to a personal checking account used for deposits, payments and transfers of funds.  Correspondent accounts facilitate the flow of money worldwide, often for transactions that otherwise have no connection to New York."  *Licci ex rel. Licci v. Lebanese Canadian Bank, S.A.L.*, 732 F.3d 161, 165 n.3 (2d Cir. 2013) (internal citations and quotation marks omitted).

After receiving briefing, Dkt. Nos. 21–25, 28, the Court heard oral argument on the application, and then denied the motion from the bench, Dkt. No. 32; March 9, 2023 Minute Entry.  The Court ruled that it did not have personal jurisdiction over Defendant and thus Plaintiff failed to demonstrate the likelihood of success required for attachment.  Dkt. No. 32 at 17–18; *see Silverman v. Miranda*, 116 F. Supp. 3d 289, 310 (S.D.N.Y. 2015).  The sole basis for jurisdiction then asserted by Plaintiff was on a *quasi in rem* theory—that this Court had jurisdiction over Defendant based on its power over property within the state of New York.  The Court determined that it could not exercise jurisdiction over the Defendant because the *quasi in rem* jurisdictional inquiry, "like the minimum contacts inquiry generally, focuses on 'the relationship among the defendant, the forum and the litigation,'" Dkt. No. 32 at 19 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)), and Plaintiff had failed to establish the requisite nexus between the forum and the litigation.  Two independent reasons animated the Court's conclusion: (1) Plaintiff had not established that there was any relationship between his causes of action and Defendant's New York-based correspondent bank accounts; and (2) even assuming that money that Plaintiff sent to Defendant passed through New York-based correspondent accounts, he failed to allege a relationship between his claims and the accounts at issue.  *Id.* at 20–21.  The Court concluded that each of Plaintiff's claims revolved around activities that took place in Lebanon and that it was "entirely incidental to those claims that the funds that ended up in Plaintiff's Lebanese bank account first traveled through a United States account."  *Id.* at 21–22.

On June 29, 2023, Defendant filed this motion, accompanied by a memorandum of law in support of the motion, and three declarations.  Dkt. Nos. 38–42.  Plaintiff filed a memorandum of law in opposition to the motion to dismiss and three declarations on August 18, 2023.  Dkt. No.

49.[3]  Defendant filed a reply memorandum of law in further support of its motion to dismiss on September 15, 2023, along with two additional declarations.  Dkt. Nos. 53–55.  On October 4, 2023, Defendant filed a letter with supplemental authority relevant to the motion.  Dkt. No. 56.

## DISCUSSION

Plaintiff asserts five substantive claims in his complaint: (1) breach of contract for Defendant's failure to honor his requests to withdraw or transfer his funds; (2) conversion for converting his U.S. dollar deposits into Lebanese pounds of substantially lesser value; (3) a violation of the New York Uniform Voidable Transactions Act for transferring his assets in the accounts to corporate insiders, high-level officials within Lebanon, and international banks; (4) a violation of the New York Uniform Fraudulent Conveyance Act for transferring Plaintiff's euro and U.S. dollar assets to third parties and corporate insiders, high-level officials within Lebanon, and international banks without receiving reasonable value in exchange; and (5) fraudulent conveyance in violation of New York Debtor and Creditor Law.  Dkt. No. 18 at 10–14.

Defendant's motion to dismiss is predicated on both jurisdictional and substantive grounds.  In support of its argument that the Court lacks jurisdiction, Defendant contends that it is not subject to *in personam* jurisdiction in New York under New York's long-arm statute, Dkt. No. 39 at 7–13, that the lawsuit must be dismissed based on a mandatory forum selection clause in Plaintiff's account opening agreement, and that *forum non conveniens* further supports dismissal, *id.* at 13–18.  Substantively, Defendant contends that the complaint fails to state a claim for relief.  *Id.* at 18–25.

---

[3] On July 26, 2023, Plaintiff filed a letter motion for jurisdictional discovery.  Dkt. No. 43.  The Court denied that motion without prejudice to Plaintiff's request for jurisdictional discovery in connection with his opposition to the motion to dismiss.  Dkt. No. 45.

The Court begins with the personal jurisdiction issue.  *See, e.g.*, *NuMSP, LLC v. St. Etienne*, 462 F. Supp. 3d 330, 341 (S.D.N.Y. 2020).  "A court facing challenges as to both its jurisdiction over a party and the sufficiency of any claims raised must first address the jurisdictional question and must dismiss the action against any defendant over whom it lacks personal jurisdiction."  *Romero v. 88 Acres Foods, Inc.*, 580 F. Supp. 3d 9, 14 (S.D.N.Y. 2022); *see* Fed. R. Civ. P. 12(b)(2).

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant."  *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996).  "[T]he showing a plaintiff must make to defeat a defendant's claim that the court lacks personal jurisdiction over it 'varies depending on the procedural posture of the litigation.'"  *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (per curiam) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).  Where, as here, jurisdictional discovery has not been conducted, the plaintiff need only make a *prima facie* showing by his pleadings and affidavits that jurisdiction is proper.  *Id.* at 85; *see also Metro. Life Ins. Co.*, 84 F.3d at 567.

This *prima facie* showing "must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant."  *Dorchester Fin. Sec.*, 722 F.2d at 85.  While the Court "construe[s] the pleadings and affidavits in the light most favorable to plaintiffs," *id.*, the Court "will not draw argumentative inferences in the plaintiff's favor" and need not "accept as true a legal conclusion couched as a factual allegation," *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013).

"To determine whether the exercise of personal jurisdiction is proper in a diversity case, the Court must conduct a two-part inquiry: first, the Court looks at whether there is a basis for

personal jurisdiction under the laws of the forum state, and second, the Court must examine whether the exercise of personal jurisdiction comports with constitutional due process." *Loughlin v. Goord*, 558 F. Supp. 3d 126, 139 (S.D.N.Y. 2021); *see Licci*, 732 F.3d at 168; *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002).

"In New York, there are two ways to establish personal jurisdiction over a defendant: (1) 'general jurisdiction' under N.Y. C.P.L.R. § 301; and (2) 'specific jurisdiction' under N.Y. C.P.L.R. § 302." *Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F. Supp. 3d 97, 103 (S.D.N.Y. 2015).  Plaintiff does not assert that Defendant is subject to general personal jurisdiction under N.Y. C.P.L.R. § 301.  Nor could he.  Plaintiff alleges only that "Defendant is a Lebanese bank with its principal place of business in Lebanon," Dkt. No. 18 ¶ 12, rather than asserting that Defendant is "engaged in such a continuous and systematic course of doing business in New York as to warrant a finding of its presence" here, *Landoil Res. Corp. v. Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990).  Instead, Plaintiff seeks to establish the Court's specific personal jurisdiction over Defendant through New York's long-arm statute, N.Y. C.P.L.R. § 302(a), and in particular under N.Y. C.P.L.R. § 302(a)(1).[4]  That statute provides, in relevant part, that "a court may exercise personal jurisdiction over any non-domiciliary, . . . who in person or through an agent: transacts any business within the state or contracts anywhere to supply goods or services in the state," "[a]s to a cause of action arising" from the transaction of such business.  N.Y. C.P.L.R. § 302(a)(1).  To establish jurisdiction

---

[4] In his complaint, Plaintiff also alleged that the Court had *quasi in rem* jurisdiction under C.P.L.R. Sections 314(3) and 6201(1) as a result of its contemplated attachment of funds held by the Defendant in accounts in New York. Dkt. No. 18 ¶¶ 53–54.  The Court, however, denied Plaintiff's motion for a writ of attachment and held that Plaintiff's allegations failed to establish *quasi in rem* jurisdiction.  Dkt. No. 31.  That decision is law of the case.  *See Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009); *Romero v. Manhattan & Bronx Surface Transit Operating Auth.*, 2022 WL 624451, at *6–7 (S.D.N.Y. Mar. 2, 2022).

under N.Y. C.P.L.R. § 302(a)(1), "two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015) (quoting *Licci*, 732 F.3d at 168).

Plaintiff here alleges that Defendant "has purposefully availed itself to [sic] establish and maintain commercial banking relationship [sic] with US banks located in New York County, City and State of New York by maintaining correspondent bank accounts, known as 'Interbank' or 'Nostro' bank accounts located in this jurisdiction," and that Defendant "repeatedly and systematically" used those correspondent bank accounts "to purposefully avail itself to [sic] New York's dependable and transparent banking system," as well as "the US dollar as a stable and fungible currency." Dkt. No. 18 ¶¶ 50, 52. He alleges that Defendant holds out its correspondent banking relationships "to the world, as a means to further its commercial activities and to obtain market acceptance, as well as maintain direct and continuous contact with the New York State and US correspondent banks located in that State." *Id.* ¶ 51. Plaintiff identifies five United States banks with whom Defendant has a correspondent banking relationship. *Id.* ¶¶ 13–17. Appended to his memorandum opposing Defendant's motion to dismiss, Plaintiff also submitted the declaration of an advisor on banking practices, operations, and systems. Dkt. No. 49-2. As relevant here, the advisor explains that: (1) foreign international banks, such as Defendant, maintain correspondent bank accounts to facilitate the receipt, payment, or other transfers of local currency denominations, *id.* ¶ 5; (2) correspondent banks process deposits, transfers, withdrawals, investments, and other financial services in United States currency for foreign institutions, *id.* ¶ 12; (3) Plaintiff's transfers from his Wells Fargo account likely would have traveled through one of Defendant's correspondent banks in New York before being sent

onward to his specific account with Defendant, and, if his funds were transferred pursuant to his withdrawal instructions to an account in the United States, they would have been paid out of a correspondent account Defendant had in New York, *id.* ¶ 13; (4) "[b]anking practices dictate that USD transferred abroad comply with the correspondent banking agreement between the correspondent bank and the foreign bank," *id.* ¶ 16; and (5) the transfer of funds to Defendant from Wells Fargo through a correspondent account would be reflected by "an accounting entry in the [Demand Deposit Accounting System] . . . which credited the [Defendant's] account for further payment into the client's account at the Byblos Bank branch specified," *id.* ¶ 16.[5]

Plaintiff's allegations are insufficient to establish the Court's personal jurisdiction over Defendant.  The Second Circuit's decision in *Daou v. BLC Bank, S.A.L.*, 42 F.4th 120, involved nearly identical facts to those alleged here and is controlling.  The plaintiffs there, Joseph and Karen Daou, were dual citizens of the United States and Lebanon who alleged—like Plaintiff here alleges—that they were induced to deposit United States currency into Lebanese bank accounts with the promise that they would be able to withdraw that money in the United States, only to have the banks renege on that promise and to keep their funds trapped in Lebanon during the Lebanese financial crisis.  *Id.* at 125–26.  In particular, the Daous alleged that the defendant banks failed to honor their repeated requests to execute wire transfers of millions of dollars from their accounts in Lebanon to accounts in the United States.  *Id.* at 126–27.  Ultimately, the defendant banks gave the Daous checks denominated in United States dollars but which could be

---

[5] Plaintiff also has submitted (1) an unauthenticated set of alleged text messages which he claims contain Whatsapp messages intended to entitle him to deposit his money in Lebanon and to use his funds to engage in various real estate transactions, Dkt. No. 49 at 7 n.1, Dkt. No. 49-1, and (2) a declaration signed by him which largely reiterates the allegation of the complaint but adds: "I have exhausted every possible avenue to attempt to recoup my money and obtain redress and my last resort is through this Court in this action where I am seeking $19,000,000.00 of my money on deposit with Byblos Bank," Dkt. No. 49-3 ¶ 23.

cashed only in Lebanon.  *Id.* at 127.  The Daous brought common law claims for civil conspiracy, fraud, issuance of dishonored checks, conversion, breach of contract, promissory estoppel, and unjust enrichment, as well as statutory claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c), and alleged damages in excess of $60 million. *Id.* at 127.

The Daous alleged that the Lebanese banks that had enticed them to deposit United States dollars and that had refused to return the Daous' money by wire back to the United States were subject to personal jurisdiction under C.P.L.R. § 302(a)(1), based on their correspondent banking relationships in New York.  The Daous' allegations were almost identical to those of Plaintiff here.  They alleged that the banks "purposefully use[d] New York correspondent accounts on a regular basis to move USD deposits in and out of Lebanon." *Id.* at 130.  The Daous also alleged that the banks had used their New York correspondent accounts to handle the Daous' money in the past "and likely would have done so if, counterfactually, they had transferred the Daous' money to the United States as promised." *Id.* at 131.

Relying on an unbroken line of decisions from New York's lower courts, the Second Circuit held that the Daous' allegations were insufficient to render personal jurisdiction over the Lebanese banks proper under C.P.L.R. § 302(a)(1). *Id.* at 125.  The court determined that the Daous' allegations that the defendant banks used New York correspondent accounts to regularly move U.S. dollar deposits in and out of Lebanon satisfied the first prong of the 302(a)(1) test— the banks had "transacted business" in New York. *Id.* at 129–30.  But the Daous' allegations failed the second prong—none of the Daous' legal claims arose from the Lebanese banks' transactions in New York. *Id.* at 130.  Both the Daous' allegation that the defendant banks had used the correspondent accounts to pay out wire transfers in the past, and their allegation that the

banks would have used the correspondent accounts to pay out the requested wire transfers that were never effected, were, separately and together, insufficient to establish the requisite nexus. "To the extent that the Daous allege[d] that the [Lebanese banks] advertised the availability of their New York correspondent accounts to potential customers and used those accounts to transfer some of the millions of dollars in the Daous' accounts into Lebanon in the first instance, the connection between those past transactions and the claims [made by the Daous was] 'merely coincidental.'" *Id.* at 132 (quoting *Johnson v. Ward*, 829 N.E.2d 1201, 1203 (N.Y. 2005)). The Lebanese banks could just as easily have "routed the Daous' USD deposits through correspondent accounts in Florida, London, or Switzerland, or through no correspondent account at all." *Id.* The harm resulting from the banks' refusals to effectuate wire transfers would have been the same. And the Daous' allegation "that the requested wire transfers likely would have been routed through the New York correspondent accounts if the [Lebanese banks] had not refused those requests," was, the Circuit found, "not only highly speculative, but supplie[d] no connection whatsoever, much less a substantial one, between the claims and any actual transaction that occurred in New York." *Id.* The court could find no authority that would predicate personal jurisdiction on "a hypothetical future transaction that never actually occurred." *Id.* The court concluded that all of the Daous' claims "turn[ed] on alleged measures taken by Lebanese banks in Lebanon to ensure that USD deposits remained in that country," and that the Daous had failed to allege that the Lebanese banks had "used an actual, specific transaction through a New York correspondent account in the course of bringing about the injuries on which the claims [were] predicated—namely, that the Daous' USD remained in Lebanon." *Id.* Accordingly, the Daous' claims against the Lebanese banks were properly dismissed.

In the wake of *Daou*, the courts in this District have not hesitated to dismiss for lack of personal jurisdiction claims against Lebanese banks for their failure to return U.S. dollar deposits to the plaintiff's accounts in the United States where jurisdiction is predicated upon a foreign bank's use of correspondent accounts in New York.  In *Elghossain v. Bank Audi S.A.L.*, 2023 WL 3005524 (S.D.N.Y. Feb. 23, 2023), *report and recommendation adopted by* 2023 WL 6390160, the court considered a claim by plaintiffs who claimed that the defendant Lebanese bank at which they established an account denominated in Lebanese pounds had refused to convert its contents to U.S. dollars, and wire the money to the plaintiffs' bank in North Carolina, leaving them with "nearly worthless" Lebanese pounds.  *Id.* at *1.  The plaintiffs alleged that they were lured into sending U.S. dollars to the Lebanese bank through a wire that designated the bank's correspondent bank in New York by assurances of a high interest rate and that there would be no restrictions on their ability to withdraw their U.S. dollars and transfer them out of Lebanon.  *Id.* at *3–4.  Judge Moses ruled that *Daou* was fatal to the plaintiffs' claims.  Any advertising by the Lebanese bank that transfers would be effected through New York-based correspondent accounts constituted a "merely coincidental" connection to the state.  *Id.* at *7 (quoting *Daou*, 42 F.4th at 132).  Without an identification of a specific transaction undergirding the plaintiffs' legal claims that occurred in New York, the court found that it could not assert personal jurisdiction over the defendant bank.  *Id.* at *12 (citing *Daou*, 42 F.4th at 132).  Judge Gardephe adopted Judge Moses' report and recommendation in its entirety over plaintiffs' objections.  2023 WL 6390160, at *1.  He concluded that "[a]dvertising New York correspondent accounts and using the New York correspondent accounts to wire money to Plaintiffs in North Carolina is insufficient to establish personal jurisdiction [in New York]."  *Id.* at *13.

And in *Moussaoui v. Bank of Beirut & the Arab Countries*, 2023 WL 5977239, the court dismissed for want of jurisdiction a complaint with near identical facts and allegations stemming from a Lebanese bank's refusal to wire funds sent to it from the United States through a New York correspondent bank account. *Id.* at *1–2, 7. The court held, like *Daou* and *Elghossain*, that, where a plaintiff makes only "broad allegations regarding correspondent banking relationships and accounts maintained by the defendants in New York" that "do not arise out of any *specific* transaction or business activity conducted by the defendants in New York," the plaintiff had failed to make the requisite showing to warrant personal jurisdiction under N.Y. C.P.L.R. § 302(a)(1). *Id.* at *6–7 (citing *Daou*, 42 F.4th at 130).

The New York State courts have reached the same results. *See, e.g.*, *Chaar v. Arab Bank P.L.C.* --- N.Y.S.3d ----, 2023 WL 6626845 (1st Dep't Oct. 12, 2023); *Khalife v. Audi Saradar Private Bank SAL*, 11 N.Y.S.2d 468 (1st Dep't 2015); *Trans Atlantic Imaging S.A.L. v. Banque MISR Liban S.A.L.*, 2021 WL 2435887 (N.Y. Sup. Ct. June 15, 2021); *Malaeb v. Bankmed S.A.L.*, 2021 WL 1925638 (N.Y. Sup. Ct. May 13, 2021).

Plaintiff's assertions here are essentially indistinguishable from those in *Daou*, *Moussaoui*, and *Elghossain*. Plaintiff has failed to show that his claims arose from any correspondent bank transactions. His claim that the Court has personal jurisdiction over Defendant rests on no more than "broad allegations regarding correspondent banking relationships and accounts maintained by the [D]efendant[] in New York," *Moussaoui*, 2023 WL 5977239, at *7, and he does not allege that Defendant "used an actual, specific transaction through a New York correspondent account in the course of bringing about the injuries on which the claims are predicated," *Daou*, 42 F.4th at 132. Although it may be that the U.S. dollars that Plaintiff transferred to Lebanon were sent there by Defendant's correspondent bank account in

New York, and are reflected by an accounting entry as between the correspondent bank and the Lebanese bank, the same was true in *Daou*. That fact is "merely coincidental." *Id.* Defendant's failure to transfer money that Plaintiff requested, its conversion of Plaintiff's money from U.S. dollars to Lebanese pounds without his consent, its transfers to others, which give rise to Plaintiff's substantive causes of action, all occurred in Lebanon. Without any indicia that Plaintiff's legal claims are based on transfers effectuated by Defendant's correspondent accounts, the Court cannot exercise personal jurisdiction over Defendant under New York C.P.L.R. § 302(a)(1).

For related reasons, Plaintiff's request for jurisdictional discovery is denied. Plaintiff has "not made a *prima facie* showing that the district court could properly exercise jurisdiction over" Defendant and has failed to establish a genuine issue of jurisdictional fact. *Daou*, 42 F.4th at 133 n.6; *see Reed Int'l, Inc. v. Afg. Int'l Bank*, --- F. Supp. 3d ----, 2023 WL 2138600, at *15 (S.D.N.Y. Feb. 21, 2023). And Plaintiff has further "failed to show how the information [he] hoped to obtain . . . would bear on the critical issue" for jurisdiction. *Gualandi v. Adams*, 385 F.3d 236, 245 (2d Cir. 2004); *see also Haber v. United States*, 823 F.3d 746, 753 (2d Cir. 2016). The Court declines to exercise its broad discretion to order discovery in these circumstances. *See, e.g.*, *Select Harvest USA LLC v. Indian Overseas Bank*, 2023 WL 2664079, at *11 (S.D.N.Y. Mar. 28, 2023).

In light of the Court's disposition of Defendant's personal jurisdiction challenge, the Court has no occasion to address the remainder of Defendant's arguments.

**CONCLUSION**

14

For the foregoing reasons, Defendant's motion to dismiss for lack of jurisdiction is GRANTED and the Plaintiff's complaint is DISMISSED without prejudice.  The Clerk of Court is respectfully directed to close this case.

It is SO ORDERED.

Date: October 22, 2023

LEWIS J. LIMAN
United States District Judge